UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NUMBER 3:07cr51RM |
| | ) | |
| BRANDON M. LOTTIE (01) and | ) | |
| JOHNNY D. TINKER (02) | ) | |

OPINION AND ORDER

Defendant Johnny D. Tinker objects to the magistrate judge's report and recommendation stating that Mr. Tinker's motion to suppress [Doc. No. 30] and motion for severance [Doc. No. 32] should be denied. The reader's familiarity with the entire October 12 report and recommendation [Doc. No. 46] is assumed. For the reasons that follow, the court overrules Mr. Tinker's objections, denies Mr. Tinker's motion to suppress because the warrantless search of Mr. Tinker's person, his cellular phone, and the vehicle he exited from were reasonable, and denies Mr. Tinker's motion for severance as moot.

*Motion to Suppress*

Mr. Tinker doesn't contend that the report and recommendation contains factual inaccuracies, so the court adopts the magistrate judge's recitation of the facts. Mr. Tinker objects to the recommended denial of his motion to suppress evidence on the ground that the magistrate judge improperly relied on legal authority inconsistent with the current case law.

Specifically, Mr. Tinker challenges the magistrate judge's reliance upon the legal theories regarding inventory searches, inevitable discovery, and exigent circumstances, as exceptions to the warrant requirement applicable here. Mr. Tinker argues that because he and Mr. Lottie already were handcuffed and placed outside of the Envoy before the officers' search of the vehicle, no exigent circumstances existed and the officers should have obtained a warrant to search the vehicle and his cellular phone, similar to United States v. Adams, 26 F.3d 702 (7th Cir. 1994) and United States v. Johnson, 380 F.3d 1013 (7th Cir. 2004). Thus, according to Mr. Tinker, the officers' eventual inventory of the Envoy and discovery of the evidence anyway, does not make the warrantless searches proper.

The magistrate judge's recommendation to deny the motion to suppress is the correct one, with one wrinkle. Specifically, the magistrate judge determined that the facts of the case showed "an abundance of evidence to support probable cause for the arrests of both Lottie and Tinker." Instead, the court finds that Mr. Tinker's initial detention was not an arrest based on probable cause, but was a reasonable detention that quickly ripened into a full blown arrest. After about a month of working with the cooperating source to set up the drug deal with Mr. Lottie, the officers were unaware of Mr. Tinker's participation. It was only after the cocaine deal was set up to take place on May 2, 2007 via several recorded calls, after the cooperating source retrieved what appeared to be four bricks of cocaine from the back seat of the gray Oldsmobile sitting in the Wal-Mart parking lot, and

after Officer Kaser positively identified Mr. Lottie exiting Wal-Mart, that the command was given to execute the takedown of Mr. Lottie, who went to an Envoy 20-30 feet away from the gray Oldsmobile.

Only upon ordering Mr. Lottie out of the Envoy's driver's seat at gunpoint did the officers unexpectedly find Mr. Tinker in the passenger seat and ordered him out of the vehicle for safety reasons. At that point, the officers didn't know about the gun inside the Envoy, the Oldsmobile keys inside Mr. Tinker's pants pocket, or Mr. Tinker's recent communication with Mr. Lottie. Once Mr. Lottie and Mr. Tinker were out of the Envoy, the officers placed them in handcuffs.

Thus, while there was probable cause to arrest Mr. Lottie at the onset of his takedown, only reasonable suspicion existed to detain and question Mr. Tinker as to his identification and the reason for his presence in the Envoy's passenger seat — whether it be innocent, or for the purpose of participating in the drug deal and conducting counter-surveillance, as the officers suspected. *See*, Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (*quoting* Terry v. Ohio, 392 U.S. 1, 27 (1968)) (an officer may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. . . . [T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity."). Further, in light of the regularity with which persons in the

3

illegal drug business are found to be armed, the officers' brandishing of firearms did not transform Mr. Tinker's detention into an arrest. United States v. Askew, 403 F.3d 496, 508 (7th Cir. 2005); United States v. Tilmon, 19 F.3d 1221, 1227 (7th Cir. 1994). The police knew that they were dealing with large quantities of cocaine, large amounts of money, all in a populated business parking lot. Under these circumstances, the display of force by the police was sensible and did not immediately convert the detention of Mr. Tinker into a full blown arrest.

After removing Mr. Tinker from the Envoy and placing him in handcuffs, Officer Juan Lora lawfully frisked Mr. Tinker for weapons and found a lump in his pants pocket. *See,* Terry v. Ohio, 392 U.S. 1, 26 (1968); Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Officer Lora asked Mr. Tinker what was in his pocket, and Mr. Tinker said it was keys to the Oldsmobile; the same Oldsmobile of which Mr. Tinker had a clear, unobstructed view to conduct counter-surveillance, and from which Officer Juan Lora knew the cooperating source had retrieved the cocaine as instructed by Mr. Lottie. At this point, Officer Juan Lora, a trained and experienced narcotics officer of eleven years, had probable cause to believe that Mr. Tinker was connected to the drug deal, and so arrested him. *See,* United States v. Lake, 500 F.3d 629, 632 (7th Cir. 2007) (probable cause exists when "the known facts and circumstances are sufficient for a reasonably prudent person to form the belief that contraband or evidence of a crime will be found"); United States v. Mendoza, 421 F.3d 663, 667-68 (8th Cir. 2005). Once Mr. Tinker was

4

lawfully arrested, the retrieval of the Oldsmobile keys and then the cellular phone from Mr. Tinker's pants pocket were valid as a search incident to his lawful warrantless arrest. Minnesota v. Dickerson, 508 U.S. at 375; United States v. Mendoza, 421 F.3d at 667-668.

Since both Mr. Tinker and Mr. Lottie were found inside the Envoy before their takedowns, the officers were allowed to make a contemporaneous search for weapons of the Envoy and the compartments inside it, including examination of the closed center counsel compartment, since the compartment was within reach of the arrestees. *See* New York v. Belton, 453 U.S. 454, 460-61 (1981); Michigan v. Long, 463 U.S. 1032, 1047-1050 (1983); United States v. Arnold, 388 F.3d 237 (7th Cir. 2004); United States v. Sholola, 124 F.3d 803, 817-818 (7th Cir. 1997). Because Mr. Tinker occupied the Envoy immediately before his removal from the passenger seat, the reasoning of United States v. Adams, 26 F.3d 702, 704-705 (7th Cir. 1994), upon which Mr. Tinker relies, is inapplicable.

The court agrees with the magistrate judge's determination that even absent any error in the officers retrieving the gun from the Envoy, and the keys and cellular phone from Mr. Tinker, while at the scene, the government has shown by a preponderance of the evidence, that it would ultimately and legitimately have found the evidence through the lawful impoundment and inventory search of the Envoy and the arrest and processing of Mr. Tinker for admission into jail. *See*, Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Blackwell, 416 F.3d 631,

633 (7th Cir. 2005); cf. United States v. Johnson, 380 F.3d 1013 (7th Cir. 2004);
United States v. Jensen, 169 F.3d 1044, 1048 (7th Cir. 1999) (after making a valid
arrest, officers may lawfully conduct an inventory search of the defendant's
automobile pursuant to police policy). Mr. Tinker's assertion that United States
v. Johnson, 380 F.3d 1013 (7th Cir. 2004), has a more reasoned approach to the
applicability of exceptions to the warrant requirement, does not win the day
because here we have "lawful" inevitable discovery.

Lastly, as to the search of Mr. Tinker's recently recorded phone numbers in
his cellular phone, the court agrees with the report and recommendation that the
search was justified by the exigent circumstances reasonably believed by the
officers to exist at the time. See, United States v. Bell, 500 F.3d 609, 613 (7th Cir.
2007) ("Exigent circumstances exist if a officer had an objectively 'reasonable belief
that there was a compelling need to act and no time to obtain a warrant.' ... The
question as to whether exigent circumstances exist is viewed through the eyes of
a reasonable police officer."). Those circumstances arose from the several officers'
reasonable beliefs that counter-surveillance was being conducted in the immediate
vicinity. Concern for officer safety and for the public in the midst of a large drug
transaction entitled the officers to immediately search the cellular phone for
recently recorded phone numbers in order to determine if the cell phone's limited
memory revealed the participation of not only Mr. Tinker, but other unknown
individuals involved in the drug transaction. See United States v. Parada, 289

6

F.Supp.2d 1291, 1303-1304 (D.Kan. 2003) (because of the limited memory to retain incoming and outgoing numbers, officers were justified in seizing the numbers under the exigent circumstances exception). The officers had reason to believe that Mr. Tinker and others, unknown but potentially present and armed, were participants in the cocaine deal. *See*, United States v. Amaral-Estrada, 2007 WL 4246129 at *6 (7th Cir. 2007) (Fourth Amendment analysis focuses on the officers' honest beliefs rather than whether those beliefs turn out to be true). In response to that exigency, the officers searched the call history of the cellular phone lawfully retrieved from Mr. Tinker.

In sum, viewing the totality of the circumstances surrounding this transaction, no Fourth Amendment violation occurred.

*Motion to Sever*

On November 2, 2007, Mr. Lottie pleaded guilty before the magistrate judge who issued a report and recommendation [Doc. No. 57] determining that Mr. Lottie should be adjudged guilty of Count 1 of the Indictment in violation of 21 U.S.C. § 846. After no objections were filed, this court adopted the magistrate judge's findings and recommendations [Doc. No. 60]. Having accepted Mr. Lottie's

plea and found Mr. Lottie guilty of Count 1 of the Indictment, the issue of whether Mr. Lottie and Mr. Tinker should be tried together is now moot.

*Conclusion*

A review of the motions and responses, the transcript of the suppression hearing, the Report and Recommendation, Mr. Tinker's objections to the Report and Recommendation, and the government's response to those objections, convinces the court that the Report and Recommendation contains a proper recitation of the facts of this case. Based on those facts and the legal basis discussed herein, the Report and Recommendation is ADOPTED AS MODIFIED. Accordingly, Mr. Tinker's motion to suppress [Doc. No. 30] is DENIED, and as a result in the change of circumstances Mr. Tinker's motion to sever [Doc. No. 32] is DENIED AS MOOT.

SO ORDERED.

ENTERED:   January 14, 2008

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court